UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAINA PHIPPS, | No. 2:14-cv-2306-KJN |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from March 25, 2011, the date plaintiff's SSI application was filed, through April 29, 2013, the date of the final administrative decision.  (ECF No. 17.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment, and plaintiff subsequently filed a reply brief.  (ECF Nos. 19, 22.)

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 9.)

1

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.  BACKGROUND

Plaintiff was born on October 14, 1987, has a high school education, is able to communicate in English, and previously worked as a signboard carrier and a seasonal actor in a haunted house.[2]  (Administrative Transcript ("AT") 23, 34, 36-37, 69, 178.)  On March 25, 2011, at the age of 23, plaintiff applied for SSI, alleging that her disability began on January 1, 2002, and that she was disabled primarily due to depression, bipolar disorder, limited communication skills, anxiety, and difficulty with understanding people.  (AT 9, 69, 146, 179.)  After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on February 22, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  (AT 29-59.)  In a decision dated April 29, 2013, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from March 25, 2011, the date that plaintiff's SSI application was filed, through the date of that decision.  (AT 9-24.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 4, 2014.  (AT 1-3.)  Plaintiff then filed this action in federal district court on October 2, 2014, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues:  (1) whether the ALJ improperly rejected the opinion of plaintiff's treating physician Dr. Gopal Gabbur; and (2) whether the ALJ erroneously discounted plaintiff's own testimony concerning her symptoms and functional limitations.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

III.     LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

   A.     Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the

3

engaged in substantial gainful activity since March 25, 2011, plaintiff's SSI application date. (AT 11.) At step two, the ALJ found that plaintiff had the following severe impairments: borderline personality disorder, bipolar disorder, major depression, obesity, and mild degenerative joint disease of the left knee. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 13.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c). The claimant can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently. The claimant can sit, stand, and/or walk six hours in an eight-hour workday. She can perform simple, repetitive tasks. She can occasionally interact with the public. The claimant can perform low stress work not involving high production requirements.

(AT 15.)

At step four, the ALJ found, based on the VE's testimony, that plaintiff was capable of performing past relevant work as a signboard carrier, because such work did not require the performance of work-related activities precluded by plaintiff's RFC. (AT 23-24.)[4] Thus, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from March 25, 2011, the date of plaintiff's SSI application, through the date of the ALJ's decision. (AT 24.)

///

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[4] In light of the ALJ's finding at step four, the ALJ did not proceed to step five of the sequential disability evaluation process.

B.     Plaintiff's Substantive Challenges to the Commissioner's Determinations

(1) Whether the ALJ improperly rejected the opinion of plaintiff's treating physician Dr. Gopal Gabbur

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

---

[5] The factors include:  (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

On January 29, 2013, Dr. Gabbur issued a mental medical source statement essentially indicating that plaintiff was completely disabled, with no useful ability to function, or an inability to meet competitive standards, as to virtually all mental abilities and aptitudes needed to do unskilled work. (AT 328-33.) As discussed below, the ALJ properly discounted Dr. Gabbur's opinion.

As an initial matter, the ALJ justifiably questioned the reliability of Dr. Gabbur's report, because numerous alterations/additions had been made to the report in different ink and with a different handwriting. (AT 19, 328-33.) As the ALJ noted, the additions "are favorable to the claimant and attempt to add to the authoring physician's opinion that the claimant's marijuana use is not material to her limitation." (AT 22.) Plaintiff's contention that the ALJ was required to re-contact Dr. Gabbur about such irregularities is without merit. The ALJ did not find that Dr. Gabbur's opinion was incomplete or otherwise missing information – the ALJ found that it was likely altered, thereby undermining its reliability. Moreover, if there were an alternative explanation for the changes to the report, plaintiff had an opportunity to submit a clarifying statement from Dr. Gabbur to the Appeals Council. Although plaintiff was represented by counsel, she apparently declined to do so. (AT 1-5.)

Setting aside the alteration issue, the ALJ also reasonably observed that Dr. Gabbur does not appear to have had a significant treatment relationship with plaintiff. (AT 22.) Despite the fact that Dr. Gabbur claimed to have seen plaintiff monthly since January 7, 2009, the record only documents one personal visit with plaintiff on September 18, 2012. (AT 22, 322-25, 328.)[6] Even though plaintiff also received some care from other treatment providers at the clinic where Dr. Gabbur worked, and Dr. Gabbur would presumably have had access to their treatment notes, it was not improper for the ALJ to consider the lack of an extensive personal treatment relationship with frequent examinations in weighing Dr. Gabbur's opinion.

////

---

[6] Again, if this were a simple mistake in failing to obtain all of Dr. Gabbur's records, one would have expected plaintiff's counsel, upon reviewing the ALJ's decision, to request and submit supplemental records from Dr. Gabbur to the Appeals Council. That was not done.

Moreover, the ALJ properly relied on the opinions of the consultative examiners to discount Dr. Gabbur's extreme opinion. (AT 21-22.) On April 28, 2008, consultative psychiatrist Dr. Timothy Canty performed a comprehensive mental evaluation and diagnosed plaintiff with borderline personality disorder. (AT 228-33.) Dr. Canty opined as follows:

> I don't think she would have difficulty with simple to moderately complex nonpublic tasks. Given her personality disorder it would be best that she attempt low stress fairly routine work. She would not have difficulty attending or completing appropriate work from a psychiatric standpoint.

(AT 231.) Several years later, on May 17, 2011, consultative psychiatrist Dr. Bradley Daigle performed another comprehensive mental evaluation and diagnosed plaintiff with borderline personality disorder, currently untreated. (AT 245-51.) Dr. Daigle observed that plaintiff "might benefit from counseling and/or medication, but as things stand currently, she appears to be capable of relatively non-stressful routine employment which does not include heavy exposure to others." (AT 249.) More specifically, he opined that plaintiff was not significantly limited in her ability to understand, remember, and carry out simple 1- or 2-step job instructions; slightly limited in her ability to follow detailed and complex instructions, maintain concentration and attention/persistence/pace, and associate with day-to-day work activity including attendance and safety; slightly to moderately limited in her ability to adapt to the stresses common to a normal work environment; and moderately limited in her ability to relate and interact with supervisors, co-workers, and the public. (Id.) Because Drs. Canty and Daigle personally examined plaintiff and made independent clinical findings, their opinions constitute substantial evidence on which the ALJ was entitled to rely.

Plaintiff argues that Drs. Canty and Daigle were not provided with all of plaintiff's treatment records for review. However, in this case, any such error was harmless, because as the ALJ noted, the weight of the treatment records are consistent with the opinions of Drs. Canty and Daigle, showing that plaintiff was generally stable and functional during periods of compliance with her treatment and medication regimen. (AT 20-22, 239-44, 299-301, 319-20.) Indeed, most of plaintiff's episodes of increased symptoms and decompensation relate to periods of time when plaintiff was not taking her medications. (See, e.g., AT 299 [December 22, 2011 involuntary

hospitalization after running out of medication approximately 1.5 months prior], 322 [at the September 18, 2012 visit with Dr. Gabbur, plaintiff was only taking her medications 2-3 days per week].)  As such, it is not very plausible that Drs. Canty and Daigle would have offered a different opinion had they reviewed all of plaintiff's records.  Additionally, even though Dr. Gabbur's opinion is more recent, that factor alone is not dispositive, particularly given the ALJ's many well-founded reasons for discounting Dr. Gabbur's opinion.

In sum, the ALJ provided specific and legitimate reasons for rejecting Dr. Gabbur's opinion.  While plaintiff urges a different interpretation of the medical evidence, the court defers, as it must, to the ALJ's rational resolution of any conflicting evidence and ambiguities in the record.

(2) Whether the ALJ erroneously discounted plaintiff's own testimony concerning her symptoms and functional limitations

As noted above, plaintiff also contends that the ALJ improperly rejected plaintiff's own testimony regarding her symptoms and functional limitations.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

8

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

In this case, the ALJ permissibly relied on the medical evidence, as properly weighed by the ALJ, to find plaintiff not completely credible. Although lack of medical evidence to fully corroborate the alleged severity of symptoms cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005).

The ALJ also legitimately referenced plaintiff's untruthfulness about her marijuana use. (AT 21.)[7] See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly considered claimant's lack of candor regarding drug and alcohol use). By way of example, on January 18, 2013, plaintiff denied drug use, but tested positive for THC (a component of marijuana) and benzodiazepine. (AT 378.)

The ALJ further properly considered plaintiff's statement that she did not attempt to work, because of the need to care for her son. (AT 17.) Plaintiff claims to have been disabled since

---

[7] Plaintiff contends that the ALJ did not specifically reference plaintiff's untruthfulness about marijuana use in the credibility analysis portion of the ALJ's decision. The court declines to apply such a mechanical reading of the ALJ's decision. The ALJ clearly referenced plaintiff's untruthfulness about marijuana use in the decision and thus plainly considered it as part of his evaluation of plaintiff's credibility. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

1   January 1, 2002, but actually worked as a signboard carrier in 2007-2008 until she stopped

2   working due to her pregnancy. (AT 146, 179-80, 229, 247.) On April 28, 2008, plaintiff told Dr.

3   Canty that childcare was the reason why she did not anticipate attempting to work any time soon.

4   (AT 230, see also AT 231 ["However, from a practical standpoint, she is deferring employment

5   and education as she is a full-time single mother."].)

6         Substantial evidence also supports the ALJ's finding that plaintiff's activities were

7   inconsistent with her allegations of disabling symptoms and limitations. (AT 17-18, 21-22.)

8   "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ

9   may discredit a claimant's testimony when the claimant reports participation in everyday

10  activities indicating capacities that are transferable to a work setting...Even where those activities

11  suggest some difficulty functioning, they may be grounds for discrediting the claimant's

12  testimony to the extent that they contradict claims of a totally debilitating impairment." Molina,

13  674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch, 400 F.3d at 680

14  (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact

15  with her nephew and boyfriend, and manage her finances and those of her nephew in the

16  credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's

17  determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and

18  occasionally care for his friend's child" was a specific finding sufficient to discredit the

19  claimant's credibility).

20        In this case, on April 28, 2008, plaintiff told Dr. Canty that she had attended Sacramento

21  City College the previous Fall, but had dropped out from the Spring semester due to pregnancy

22  stressors; she was the primary caretaker of her infant son, although her friends came over for

23  support; she managed the money; and she socialized with a few friends, watched television, and

24  listened to music. (AT 229.) A few years later, on May 17, 2011, Dr. Daigle summarized

25  plaintiff's report of her activities of daily living as follows:

26        She currently lives in an apartment in Sacramento with her son.
      She has a valid driver's license. She drives a motor vehicle without
27        particular problems. She is able to take buses. She goes out alone
      without any reported difficulty. She takes care of her own self-care.
28        She does her own household chores, housecleaning, laundry,

> shopping, childcare, and cooking. She handles the bills and money. She has one friend who helps her baby-sit. She watches television and spends time on the internet. She has a Facebook account with over 100 friends. She occasionally goes to rock concerts and she has previously played the drums and sung in a choir.

(AT 247.) At the time, plaintiff was also attending American River College with a full college load of 12 units and a GPA of about 2.0. (AT 246.) Those activities plausibly suggest that plaintiff was not as limited as she claimed, and was capable of at least simple, repetitive, low stress work with only occasional public contact.

To be sure, the record also contains some contrary evidence suggesting that plaintiff's activities were more limited. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

In light of the above, the court finds that the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony of disabling symptoms and functional limitations beyond the limitations assessed in the ALJ's RFC.

V. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 17) is DENIED.

11

Case 2:14-cv-02306-KJN   Document 24   Filed 12/23/15   Page 12 of 12

    2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED.

    3. Judgment is entered for the Commissioner.

    4. The Clerk of Court shall close this case.

    IT IS SO ORDERED.

Dated:  December 23, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE